**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Kelly Benjamin,                                                            Civil No. 12-220 (DWF/SER)

            Plaintiffs,

v.                                                                                   **MEMORANDUM
                                                                                         OPINION AND ORDER**

J. Peterson, Badge 5622, in his individual
capacity acting under the color of law as a
Minneapolis police officer; Michael Frye,
in his individual capacity acting under the
color of law as a Minneapolis police officer;
City of Minneapolis, a political subdivision
of the state of Minnesota; City of St. Paul, a
political subdivision of the state of Minnesota;
Ramsey County, a political subdivision of the
state of Minnesota,

            Defendants.

---

Peter J. Nickitas, Esq., Peter J Nickitas Law Office, LLC, counsel for Plaintiff.

Jason M Hiveley, Esq., Jon K. Iverson, Esq., and Stephanie A. Agnolkar, Esq., Iverson Reuvers, LLC, counsel for Defendants.

---

## INTRODUCTION

This action arises out of Plaintiff Kelly Benjamin's arrest during the 2008 Republican National Convention ("RNC") in St. Paul, Minnesota. Defendants have moved for summary judgment (Doc. No. 21). For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

September 1, 2008 was the first day of the RNC. (Doc. No. 25, Neuberger Aff. ¶ 2.) Prior to the RNC, a Mobile Field Force ("MFF") of approximately 1,000 officers from multiple jurisdictions was organized to police the RNC events. (*Id.*) The MFF was divided into separate, smaller divisions which contained four to six platoons, with each platoon containing approximately sixteen officers. (*Id.*) Each division received assignments and information from the East RNC Commander. (*Id.*)

Permitted marches on September 1, 2008 had ended by 3:00 p.m. (*Id.* ¶ 3.) After this time, officers pursued a rioting group that was moving through St. Paul. (Doc. No. 26, Angolkar Aff. ¶ 7, Ex. 6 ("Frye Report").) Minneapolis Police Sergeant Dale Burns recommended arrest of the group. (Angolkar Aff. ¶ 5, Ex. 4 ("Burns Dep.") at 40; Angolkar Aff. ¶ 3, Ex. 2 ("Neuberger Dep.") at 11; Neuberger Aff. ¶ 6, Ex. 3 ("Video").) MFF Divisions 6 and 8 pursued the group into a parking lot by 9th Street and Temperance. (Neuberger Dep. at 19; Video.)

Benjamin asserts that he was covering the RNC as a journalist, and that he was wearing press credentials around his neck. (Benjamin Dep. at 19-22.) Before the group entered the parking lot, Benjamin followed the officers during their pursuit of the group and first encountered Officer Frye at a loading dock near 9th Street and Temperance. (Angolkar Aff. ¶ 2, Ex. 1 ("Frye Dep.") at 19; Frye Report.) Defendants assert that Benjamin was told to leave, and was offered a route by which to leave, but that Benjamin instead ran in the direction of the protestors and was ultimately arrested along with the group in the parking lot. (Frye Dep. at 21-24.) Benjamin claims that as the officers

pursued the protesting group, he asked the officers which way to go and that they directed him to go towards the lot in which the arrests were made. (Angolkar Aff. ¶ 13, Ex. 12 ("Benjamin Dep.") at 32-33.)[1] Benjamin asserts that there was no dispersal warning given. (Doc. No. 31, Nickitas Decl. ¶ 3, Ex. 3 at ¶ 12.) The group entering the parking lot consisted of about 100-150 people. (Frye Report; Burns Dep. at 25.) In the parking lot, Benjamin was arrested as part of the group.

The parties dispute what occurred during the arrest. Defendants assert that Benjamin did not comply when he was ordered to the ground and that he resisted arrest. (Frye Dep. at 24.) Officer Frye assisted in arresting Benjamin and claims that he took hold of Benjamin's shirt and pulled him to the ground. (Frye Report; Frye Dep. at 24; Benjamin Dep. at 54-55.) Officer Frye asserts that Benjamin grabbed his arm and said "Don't tear my shirt," which required Officer Frye to reposition his grasp and use more force to get Benjamin to the ground. (Frye Report.) Defendants also assert that once Benjamin was on the ground, he kept his hands under his body and continued to resist efforts to get his hands behind his back. (Angolkar Aff. ¶ 11, Ex. 10 ("Peterson Dep.") at 22-23.) Officer Frye struck Benjamin twice on the leg with a baton and ordered him

---

[1] Benjamin recorded part of the events leading to the arrest. The Court has reviewed the recordings that were submitted by the parties. Defendants assert that Benjamin's own video shows an officer directing Benjamin back onto the sidewalk. (Angolkar Aff. ¶ 10, Ex. 9.) Benjamin claims his only option was to go through a line of bikes and officers and into the parking lot. (Benjamin Dep. at 59-60.) Officer Frye disputes this and asserts that Benjamin could have gone in the opposite direction. (Frye Dep. at 21-22.)

again to show his hands. (Frye Dep. at 24-27; Frye Report.) Defendants assert that Benjamin also resisted being placed in handcuffs. (Frye Dep. at 27-28; Frye Report.)

Benjamin asserts that Officer Frye struck him with a baton without warning, tossed him to the ground, and that he complied with the officers' orders. (Benjamin Dep. at 16, 52-54 & 78; Nickitas Decl. ¶ 3, Ex. 3 at ¶ 11.) Benjamin claims that when ordered to, he attempted to get to the ground, but while doing so he was also trying to prevent his video camera from being damaged and to remove his backpack. (Benjamin Dep. at 45-46, 54-55.) There is no dispute that Benjamin identified himself as "media" several times. (*Id.* at 45; Frye Dep. at 28.)

Benjamin claims injuries due to the arrest, including a bruise to his back and pain that required three acupuncture treatments, lacerations to his elbows, wrists and arms, as well as emotional damages. (*Id.* at 17, 53-54.) Benjamin further alleges that his video camera was destroyed when it was thrown against a brick wall during the arrest. (Benjamin Dep. at 16, 77.)

Benjamin was booked by the Ramsey County Mobile Booking Team and transported to Ramsey County Jail. (Benjamin Dep. at 68; Frye Dep. at 34, 38.) Benjamin posted bail and was released on September 4, 2008. (Benjamin Dep. at 72-74; Doc. No. 1, Compl. ¶¶ 66.4, 67.) Benjamin was charged with felony riot, but the charges were subsequently dismissed. (Benjamin Dep. at 80, 88-89.)

On January 27, 2012, Benjamin filed this action, asserting the following causes of action: unreasonable seizure under the Fourth Amendment (Counts I and III); unlawful confinement under the Fourth Amendment (Count II); excessive force under the Fourth

Amendment (Count IV); infringement of free speech (Count V); violation of his rights as a journalist under 42 U.S.C. § 2000aa (Count VI); *Monell* claims against the cities of St. Paul and Minneapolis (Count VII), conversion (Count VIII); negligence against the City of Minneapolis, Defendant Frye, and Defendant Peterson (Count IX); and unreasonable seizure against Ramsey County under *Monell* (Count X). In his opposition, Benjamin agreed to dismiss his *Monell* claim against Ramsey County (Count X) and did not offer an argument to support Counts III, VIII, or IX. Thus, the Court dismisses Counts III, VIII, IX, and X.

## DISCUSSION

### I. Legal Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the

record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.     Motion for Summary Judgment

### A.     Claims Against Officers Peterson and Frye

Benjamin asserts claims under the First and Fourth Amendments against Officers Peterson and Frye based on his arrest (Count I), confinement in jail (Count II), the officers' alleged use of excessive force (Count IV), and the alleged violation of Benjamin's First Amendment rights to freedom of the press (Count V). Defendants move for summary judgment on these claims on the basis of qualified immunity.

The doctrine of qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986). To overcome the defense of qualified immunity, a plaintiff must show that: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation. *Parrish v. Ball*, 594 F.3d 993, 1001

(8th Cir. 2010) (citation omitted). The Court has discretion to decide which qualified immunity prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### 1. Arrest and Confinement

Benjamin argues that his arrest and confinement violated his Fourth Amendment rights (Counts I and II). Specifically Benjamin asserts that the officers lacked probable cause for his arrest. (Compl. ¶ 79.) A warrantless arrest, unsupported by probable cause, violates the Fourth Amendment. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010). Probable cause is defined as a reasonable probability that a crime has been or is being committed. *Id*. at 474. In the context of qualified immunity, the Court determines whether arguable probable cause existed to arrest. *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008). The touchstone of the Fourth Amendment is reasonableness under the particular circumstances presented. *Samson v. California*, 547 U.S. 843, 855 n.4 (2006). Thus, what is reasonable in riot conditions may not be reasonable under calmer, less chaotic circumstances. *See Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012). The validity of a seizure may be based on the collective knowledge of all law enforcement officers involved if communication exists between them. *See, e.g.*, *United States v. Gregoire*, Crim. No., 09-275, 2009 WL 5216844, at *18 (D. Minn. Dec. 29, 2009), *aff'd* 638 F.3d 962 (8th Cir. 2001) (finding probable cause based on the collective knowledge of the police formed through outside information and a warranted search). In the context of a large disturbance, the Fourth Amendment may be satisfied if the officers have grounds to believe that all arrested persons were part the unit violating the law. *See, e.g.*, *Bernini*, 665 F.3d at 1003 (finding it reasonable to conclude

that individuals exhibiting similar conduct were acting as a unit); *Carr v. District of Columbia*, 587 F.3d 401, 408 (D.C. Cir. 2009) (finding probable cause to arrest people exhibiting behavior that would identify them as being part of the group). Defendants urge the Court to conclude that, as a matter of law, the ultimate arrest of Benjamin is inconsequential because, based on the record, the officers had a reasonable basis to believe that each person, including Benjamin, was part of the rioting crowd.

Here, the record contains evidence that, from the officers' perspective, Benjamin was, indeed, one of several individuals subject to a mass arrest that occurred after officers pursued a rioting crowd through the streets of St. Paul. Benjamin, however, has pointed to record evidence that he was at the scene of the arrest as a journalist covering the RNC, he had laminated press credentials around his neck, and he announced several times that he was "media" to the arresting officers. Benjamin also asserts that no dispersal warning was given and that he asked the police for a route to leave the rioting crowd but was directed into the area where the arrests occurred.

Based on the record before it, and viewing the facts in the light most favorable to Benjamin, the Court concludes that fact issues exist as to the reasonableness of Benjamin's arrest, particularly in light of the evidence that Benjamin declared that he was "media" and was wearing press credentials that were visible to the arresting officers. Thus, even if the officers initially had a reasonable belief that Benjamin was part of a rioting crowd, a reasonable juror could conclude that this belief became unreasonable

when Benjamin identified himself as a member of the press. Accordingly, the Court denies Defendants' motion for summary judgment as to Counts I and II.[2]

### 2. Excessive Force

Benjamin also asserts that Officers Frye and Peterson used excessive force in arresting him. The Court evaluates excessive force claims under an objective-reasonableness test. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989). In determining whether the use of force is "reasonable" under the Fourth Amendment, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government's interests at stake. *Id*. at 396 (citation omitted). The reasonableness of the use of force must be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See id*. The proper application of the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

---

[2] This case is distinguishable from *Bernini* because the officers in *Bernini* contained the protest participants in a park but did not actually arrest them all. 665 F. 3d at 1002. Officers assessed the crowd and identified participants for arrest because the group appeared to stay together. *Id*. Roughly 200 of the approximately 400 people were released. *Id*. It does not appear in this case that officers attempted to discern who was actually involved in the riot and arrested everyone present in the parking lot. Furthermore, the arrestees in *Bernini* did not identify themselves as "media," as Benjamin did in this case.

The Court's decision turns on the question of whether, taking the facts in the light most favorable to Benjamin, Benjamin was subjected to excessive force so as to violate a constitutional right and, if so, whether that right was clearly established at the time.

Benjamin argues that Officer Frye used unreasonable force in effecting his arrest.[3] Defendants contend that Officer Frye used force that was objectively reasonable. Defendants assert that the record shows that Officer Frye pulled Benjamin to the ground after Benjamin repeatedly failed to comply with orders to get on the ground,[4] and that Officer Frye struck Benjamin's leg with a baton after Benjamin refused to put his hands behind his back. Defendants assert that these actions were reasonable. Defendants further assert that Benjamin's explanation as to why he was slow to comply with orders to get on the ground (because he was not sure how officers wanted him to go to the ground and because he was protecting his camera) reflect his subjective intentions and do not affect the reasonableness of the officers' actions. Finally, Defendants argue that Benjamin does not have a sufficient injury to support an excessive force claim.

---

[3] Other than placing the handcuffs on Benjamin, Benjamin does not identify any specific use of force by Officer Peterson that could be reasonably considered excessive. Liability under § 1983 is personal and must be independently assessed against each defendant. *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006). There being no facts to support an excessive force claim against Officer Peterson, the Court dismisses Count IV as it is asserted against Officer Peterson.

[4] After viewing the video footage, it is unclear exactly why Benjamin failed to immediately follow instructions to get on the ground. There is an approximately 10-12 second delay between the time Benjamin was ordered to the ground and the time he was taken to the ground. (Video.)

In light of the Court's conclusion that a reasonable juror could conclude that Benjamin was unlawfully arrested, particularly in light of evidence that could show Benjamin identified himself as media during the arrest, the Court also concludes that fact issues remain as to whether the use of force to effect the arrest was also unreasonable.

Defendants also argue that Benjamin's physical injuries—bruising to his back and lacerations to knees, elbows, and wrist—were de minimis and therefore could not support a finding of a constitutional violation. Prior to *Chambers v. Pennycook*, 641 F.3d 898, 901, 906 (8th Cir. 2011), it remained an open question whether an excessive force claim required a minimum level of injury. 641 F.3d at 904, 908. Even so, for purposes of the qualified immunity analysis here, the Court concludes that Benjamin's alleged injury is not de minimis. *See, e.g., Copeland v. Locke*, 613 F.3d 875, 881–82 (8th Cir. 2010) (finding lacerations from handcuffs and an injury to the knee not de minimis). Instead, Benjamin has pointed to sufficient evidence of actual injury to overcome Defendants' assertions of qualified immunity on his excessive force claim.

For the above reasons, the Court denies Defendants' motion for summary judgment on Count IV as it pertains to Officer Frye.

### 3. First Amendment

In Count V, Benjamin asserts that Defendants arrested him unlawfully while Benjamin exercised his First Amendment rights. A citizen's right to exercise First Amendment freedoms without facing retaliation from the government is clearly established. *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). In support of their motion, Defendants rely on their earlier arguments that Benjamin was validly arrested.

Namely, Defendants argue that because Benjamin was validly arrested, he does not have a First Amendment claim even if Benjamin was exercising his First Amendment rights at the time of his arrest. Because the Court has denied Defendants' motion for summary judgment as to Benjamin's claim for unlawful arrest, the Court also denies Defendants' motion as to Benjamin's First Amendment claim. The Court also points out that here, unlike in *Bernini*, where the officers attempted to discern who was actually involved in the criminal conduct, Officer Frye proceeded to arrest Benjamin and process him for Ramsey County Jail *after* Benjamin identified himself as "media" and despite the fact that Benjamin's press credentials were in view and Benjamin was carrying a video camera. While a reasonable juror could conclude that the officers were motivated by the unlawful activity of the group in arresting Benjamin, viewing the facts in the light most favorable to Benjamin, a reasonable juror could also conclude that Benjamin's First Amendment rights were violated by the continued processing of his arrest and booking in jail after it became clear he was a member of the media.

### B.     *Monell* Claim Against St. Paul and Minneapolis

In Count VII of his Complaint, Benjamin asserts *Monell* claims against the cities of St. Paul and Minneapolis for their alleged failure to protect journalists' rights during the 2008 RNC. In support, Benjamin asserts that the cities failed to create, implement, or execute an adequate policy on protecting the rights of journalists and that this failure caused the alleged violations of Benjamin's constitutional rights. (Compl. ¶¶ 101-108.)

It is well-established that a governmental entity cannot be held liable under § 1983 on a respondeat superior theory. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691

(1978). For a municipality to be liable under § 1983, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the constitutional violation." *Id*. at 694.

Benjamin's *Monell* claims fail because Benjamin has failed to point to evidence that would demonstrate a widespread policy or custom that would require or cause an individual's constitutional rights to be violated. In support of his *Monell* claims, Benjamin relies on a report that was prepared by a commission formed at the request of the St. Paul Mayor and by action of the Saint Paul City Council *after* the RNC occurred. (Nickitas Decl. ¶ 4, Ex. 4 ("Heffelfinger Report").) The portions of the report relied upon consist of findings and legal conclusions that constitute hearsay, which cannot be relied on to oppose summary judgment.

Based on the record before it, the Court concludes that there are no facts that could lead a reasonable juror to find for Benjamin on his *Monell* claims. Accordingly, Count VII is properly dismissed.

### C.     42 U.S.C. § 2000aa

In Count VI, Benjamin brings a claim under the Privacy Protection Act, 42 U.S.C. §§ 2000aa, *et seq*. (the "Act"). The Act "generally prohibits government officials from searching for and seizing documentary materials possessed by a person in connection with a purpose to disseminate information to the public." *Citicasters v. McCaskill*, 89 F.3d 1350, 1353 (8th Cir. 1996). There are certain exceptions to the Act's prohibition of searches and seizures, including when "there is probable cause to believe that the person

possessing such materials has committed or is committing the criminal offense to which the materials relate . . . ." § 2000aa(a)(1), (b)(1).

In support of their motion for summary judgment on this claim, Defendants argue that Benjamin's cameras were inventoried with his other personal belongings because he was arrested and that there is no evidence that his materials were seized for any other reason. However, if a jury finds no probable cause existed for Benjamin's arrest, and in light of the fact that Benjamin was wearing press credentials, was carrying a video camera, and identified himself as "media," the jury could also reasonably conclude that the officers should have been on notice that Benjamin intended to disseminate the videotapes to the public.

Defendants also argue that Benjamin had no subjective expectation of privacy in videotapes documenting public events. The Court finds this argument unpersuasive. *See, e.g.*, *Binion v. City of St. Paul,* 788 F. Supp. 2d 935, 948 (D. Minn. 2011) (noting that the very purpose of the Act is to protect materials that document matters of public interest).

Defendants' motion for summary judgment on Benjamin's Privacy Protection Act claim is denied.

## CONCLUSION

The Court notes that while Benjamin might be able to establish at trial that his arrest and the subsequent force used to effect the arrest were unreasonable, Benjamin's potential damages are likely minimal. The Court also notes that prevailing at the summary judgment stage is no guarantee of victory at trial.

**ORDER**

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. [21]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Counts III, VII, VIII, IX, and X are **DISMISSED WITH PREJUDICE**.

2. Count IV is **DISMISSED WITH PREJUDICE** as it is asserted against Officer Peterson.

Dated:  June 18, 2013                    s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         United States District Judge